UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | | |
|---|---|---|---|
| FARES ABULABAN, | ) | | |
| | ) | | |
| Movant/Petitioner, | ) | Case Nos.: | 1:08-cr-240 |
| | ) | | 1:08-cr-101 |
| v. | ) | | 1:11-cr-674 |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Fares Abulaban's Motion to Vacate, Set Aside and/or Correct His Sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 210). For the reasons stated herein, Petitioner's Motion is DENIED.

### I. BACKGROUND

#### A. Procedural Background

On March 13, 2008, a federal grand jury sitting in Alexandria, Virginia, returned an indictment (1:08-CR-101) charging Petitioner, with conspiracy to distribute and possess with intent to distribute cocaine and ecstasy in violation of 21 U.S.C. §§ 841-(a)(1), 846. In addition, on June 12, 2008, another federal grand jury sitting in Alexandria, Virginia returned a separate indictment (1:08-CR-240) charging Petitioner with conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 and 860 ("Count 1") and possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(I) ("Count 2").

On July 12, 2008, Petitioner pleaded guilty to conspiracy to possess with the intent to distribute ecstasy under the first indictment by way of written plea agreement and to Counts 1

1

and 2 of the second indictment through a separate oral agreement. In advance of his guilty plea, Petitioner unsuccessfully moved to suppress a .380 caliber, semi-automatic hand gun that police officers seized from his car. The oral plea agreement provided that Petitioner did not waive his right to appeal in regards to the suppression of the firearm. On March 22, 2010, in an unpublished opinion, the Court of Appeals for the Fourth Circuit affirmed the decision of this Court.

On October 20, 2008, this Court sentenced Defendant Abulaban to a term of imprisonment of 172 months on both Count One of the 1:08-cr-101 superseding indictment (ecstasy conspiracy) and Count One of the 1:08-cr-240 indictment (cocaine conspiracy), to run concurrently, as well as 60 months on Count Three (the gun charge), which runs consecutively with the two conspiracy counts. Petitioner was sentenced to a total term of imprisonment of 232 months as well as three years of supervised release on Count One of the ecstasy conspiracy and five years for each of the two counts for the cocaine conspiracy and gun charge, all to be served concurrently.

### B. Statement of Facts

Petitioner's pleas were the end product of an extensive undercover investigation conducted by the Immigration and Customs Enforcement Division ("ICE") of the Department of Homeland Security. In March 2007, Abulaban met with co-conspirator Mohammed Alazzam and an undercover ICE agent in Alexandria, Virginia to plan the acquisition and sale to the agent of 2500 ecstasy pills at $10 per tablet. Petitioner was to serve as a broker, locating a source for the pills and taking a portion of the profits. The sale, however, was never consummated.

Turning their attention to possible cocaine distribution, ICE's undercover engaged in a "reverse sting" operation, in which they would sell 20 kilograms of cocaine to various

purchasers. The Petitioner again agreed to serve as a broker for the transaction, finding purchasers and introducing them to the undercover agents. Prior to the sting, the undercover agents met with Petitioner and another conspirator (Jubal Culver) in Morgantown, West Virginia to discuss arrangements for the exchange of the drugs and money. The agents and conspirators discussed securing purchasers in Pennsylvania, West Virginia, and Washington, D.C. For his role as broker, Petitioner would get a percentage of the purchase price. At the meeting, Petitioner also discussed using vehicles to pick up money or drugs and proceeded to brag about his silver BMW, which he then drove off in.

On February 14, 2008, Petitioner and a fellow conspirator met with Agent Rodriguez and another undercover agent to "make sure everything was a go for the next day." Joint Appx. at 181. Petitioner picked up the undercover agents in his silver BMW and drove them to the nightclub where the transaction was to be carried out the following day. He showed the agents around the nightclub and drove them back to their car.

The next day, February 15, 2008, Petitioner again picked up the undercover agents in a black Cadillac. While driving around Morgantown, Petitioner asked one of the Agents if he had a gun and then discussed the brokerage "cut" from the profits. Petitioner wanted to keep two kilograms of cocaine himself, sell them and pay the agents with the proceeds. After some time, Petitioner drove to the Morgantown Hotel and went inside. When he returned, he was accompanied by two other individuals and a paper bag. He handed the paper bag, which contained approximately $40,000 to Agent Rodriguez. Petitioner and the undercover agents then moved to the silver BMW and he drove them to the nightclub. All three men went inside to wait for the sham transaction.

Eventually, other conspirators arrived at the nightclub, bringing with them "over $100,000. At about 6:30 p.m. another undercover agent arrived with the 20 kilograms of sham cocaine and the participants moved to another room. Once the sham cocaine was placed on a bar, the government agents arrested the conspirators. Following the arrest, the agents searched Petitioner's silver BMW and discover a loaded .380 caliber semi-automatic pistol.

### C. Petitioner's Guilty Pleas

As discussed, Petitioner agreed to plead guilty to Count One of the superseding indictment in the conspiracy to distribute ecstasy (1:08-cr-101). As part of his plea, Petitioner agreed to a Statement of Facts, which indicated that in March 2007 he offered to provide a large quantity of ecstasy to an undercover agent. He also agreed to plead guilty to Count One and Two of the indictment charging him with conspiracy to possess with intent to distribute cocaine and possession of a firearm in furtherance of drug-trafficking. Defendant agreed that he brokered the attempted sale of 20 kilograms of cocaine.

During the plea colloquy, the Court asked a number of questions to Petitioner and counsel, Marvin Miller, to ensure his pleas were knowing, voluntary, and counseled.

> Mr. Miller: I have gone through the agreement with him twice in person, sitting down and going through all of the provisions, Your Honor.
>
> The Court: Has Mr. Miller answered any questions you had about the documents that you have signed today? Has he answered any questions you had about the contents of the plea agreement and the statement of facts and the second indictment?
>
> Abulaban: Yes, sir.
>
> . . . .
>
> The Court: Have you told Mr. Miller everything about the case so he could represent you to the best of his ability?
>
> Abulaban: Yes, sir.
>
> The Court: And are you fully satisfied with his services?

4

>Abulaban: Yes, sir.
>
>The Court: Has anybody made any threats or promises that aren't in the agreement that we are going to talk about today to get you to plead guilty to these two indictments?
>
>Abulaban: No, sir.

Plea Hr'g Tr., Gov't Ex. 4 at 5-6.[1] The Court went on to address each count individually. Beginning with the conspiracy to possess with intent to distribute ecstasy, the Court ensured Abulaban understood his right to a jury trial, the maximum sentence, that by pleading guilty, Abulaban gave up his "right to appeal any sentence [the Court] impose[s] up to the 20 years maximum," and that the Court is not bound by any estimate of sentencing "that you have been given by Mr. Miller." *Id.* at 7-9. The Court also addressed and went over the statement of facts with Abulaban. He admitted to its veracity, specifically, he provided:

>The Court: . . . [B]ack in March of 2007 you met with an undercover agent in Tysons Corner, Virginia, in the Eastern District of Virginia, and indicated that you had been in the drug business for a long period of time, and that you arranged to meet on April 1 to further discuss distribution of 2,500 Ecstasy pills to the undercover agent, is that correct, sir?
>
>Abulaban: Yes, sir.

*Id.* at 13-14. The Court then accepted Abulaban's guilty plea to the ecstasy conspiracy. *Id.* at 15.

The Court likewise ensured Abulaban knowingly and voluntarily pleaded guilty to both counts of the second indictment. In addition to the Court's general questions to counsel and Abulaban regarding both indictments, *supra* at 3, the Court specifically outlined Abulaban's rights as to the two-count second indictment. Namely, the Court again outlined Abulaban's right to plead not guilty, detailed the maximum sentences, and ensured Abulaban's pleas were voluntarily made. *Id.* 21-25. The Court also outlined the facts contained in the indictment, which

---

[1] Miller also warranted to the Court that Abulaban knowingly and voluntarily pleaded guilty to all three counts. *See* Plea Hr'g Tr., Gov't Opp'n Ex. 4 at 15, 26.

Abulaban agreed were sufficient to prove his guilt beyond a reasonable doubt if the case went to trial. *Id.* at 21.[2] The Court then accepted Abulaban's guilty pleas to Counts 1 and 2 of the second indictment. *Id.* at 26. On October 30, 2008, the Court sentenced Abulaban to a total term of imprisonment of 232 months.

Petitioner filed the instant Motion to Vacate on June 22, 2011. Abulaban's Motion includes fourteen grounds based upon ineffective assistance of counsel and violations of his due process rights.

## II. STANDARD OF REVIEW

A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citing 28 U.S.C. § 2255). In setting forth a request for relief under § 2255 it is well settled that bare, conclusory allegations are insufficient to entitle a petitioner to relief. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

Circumstances under which a judgment of a conviction upon guilty plea may be subject to collateral attack, such as by a motion pursuant to 28 U.S.C. § 2255 are "strictly limited." *Bousley v. United* States, 523 U.S. 614, 621 (1998); *see also United States v. Timmreck*, 441 U.S. 780, 784 (1979) ("[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."). "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S.

---

[2] Miller also confirmed that the government's evidence was sufficient to prove each count and that Abulaban's pleas were knowingly and voluntarily made. *Id.* at 26.

504, 508 (1984). "Here, therefore, petitioner's guilty plea[s] make[] it unnecessary to consider h[is] challenges to the merits of h[is] conviction, and only h[is] ineffective assistance of counsel claims are subject to review." *Gao v. United States*, 375 F. Supp. 2d 456, 463 (2005).

The Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong requires a showing that counsel failed to provide reasonably effective assistance, that is, the counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Id.* at 687-88. The second prong requires the defendant to "show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When a Petitioner alleges ineffective counsel as the basis for invalidating a guilty plea, however, the *Strickland* standard is slightly modified. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). Petitioner must show "there is a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

III. ANALYSIS

Petitioner presents fourteen (14) separate grounds upon which he argues the Court should grant his Motion to Vacate. Each of the fourteen grounds, however, falls into one of two categories by which Petitioner may challenge his sentence: (1) denial of effective assistance of counsel in violation of the Sixth Amendment and (2) violations of the due process clause of the Fifth Amendment. Of the fourteen grounds listed by Petitioner, eight of the grounds are based upon ineffective assistance of counsel and six allege violations of Due Process.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his attorney, Marvin Miller, refused to pursue several courses of action which the Petitioner believes would have led to a lower sentence or acquittal on the charges. Petitioner's allegations of ineffective assistance of counsel are based on: (1) Mr. Miller's refusal to go to trial on the conspiracy charge and refusal to go to trial on the gun possession; (2) Mr. Miller's failure to wait on rulings from pre-trial motions, such as challenges to venue; (3) Mr. Miller's failure to investigate and interview potential witnesses and failure to present exculpatory evidence which would mitigate his sentence; and (4) Mr. Miller's advice to Petitioner that "greatly miscalculated" his estimated sentencing exposure. Petitioner argues that the cumulative effects of his counsel's errors lead the Court to prescribe an inordinately lengthy sentence and that his sentence should be reduced.

### 1. Decision to Enter a Plea Agreement

Petitioner argues that there is no factual or legal basis for his ecstasy conspiracy conviction or his conviction for possession of a firearm in furtherance of drug trafficking. Trial counsel, therefore, was ineffective by instructing him to plead guilty to offenses for which he was innocent. He accuses his counsel of coercing him into entering a plea agreement. To the contrary, the evidence indicates that Petitioner knowingly and voluntarily elected to pursue the plea agreement rather than go to trial. The plea colloquy cited above demonstrates that Petitioner reviewed and accepted the plea agreement as well as the statement of facts, which included the underlying conspiracy details.

On the ecstasy conspiracy conviction, the evidence overwhelmingly favors a finding that Mr. Abulaban was part of the conspiracy for which he was charged. As Defense Counsel Miller states in his affidavit, the evidence established that Alazzam, Mubaidin, and Petitioner agreed to

8

purchase the ecstasy pills resulting in profits of $2.00 per pill, of which Petitioner would receive $1.00. The fact that there was no actual sale or no overt act is not relevant to a conviction for conspiracy to distribute ecstasy. Given the strong evidence and Mr. Miller's experience as a defense counsel, his advice to Petitioner that he not go to trial on the ecstasy conspiracy was reasonable. Similarly, Mr. Miller maintains that on the charge of possessing a firearm in furtherance of drug trafficking, there was not sufficient affirmative evidence regarding the regular, unrelated use or purpose of the firearm to overcome a presumption that the gun was related to the planned drug deal. In addition, Mr. Miller demonstrated his effectiveness as a litigator by negotiating a conditional plea for Petitioner. Mr. Miller's negotiations allowed Petitioner to plead guilty to the charges while preserving appeal on suppression of the firearm. Such affirmative action by defense counsel tends to demonstrate effective assistance from counsel absent evidence to the contrary.

In addition, Petitioner is not entitled to have his motion granted based on these arguments. In an unpublished opinion following Petitioner's appeal of his sentence, the Court of Appeals for the Fourth Circuit concluded that "to suggest that Judge O'Grady relied on criminal conduct for which Abulaban's guilt was not firmly established borders on the frivolous." Dkt. No 198 at 13; USCA Case Nos. 08-5079, 08-5111. As the Supreme Court held in *Withrow v. Williams*, when a federal prisoner raises a claim that has been decided on direct review, he ordinarily cannot later attempt to relitigate that claim in a Section 2255 proceeding. *Withrow*, 507 U.S. 680, 720-21 (1993). This holding pertains both to Petitioner's claims concerning the ecstasy conspiracy as well as the possession of a firearm charges. Ultimately, because Petitioner endorsed the statement of facts included in his plea agreement both by signing the document, as well as affirming his position while before the court, and because this issue was decided on

direct review, Petitioner is not entitled to have his sentence vacated based on the alleged ineffective assistance of counsel.

### 2. Failure to Investigate Witnesses

Petitioner contends that he was denied effective assistance of counsel, guaranteed him by the Sixth Amendment, for his trial counsel's failure to investigate witnesses and present the exculpatory witnesses' testimony to the trier of fact. Petitioner claims that he advised trial counsel of witnesses who could provide testimony on his behalf, but that counsel failed to interview these witnesses or call them at hearings before the trier of fact. Clearly, Petitioner's decision to enter a plea agreement prevented his counsel from calling these witnesses to testify before the trier of fact. That issue, therefore, is resolved in favor of finding Mr. Miller's assistance was effective.

As Mr. Miller explains in his affidavit, the agreement to buy 20 kilograms of cocaine was "established by undercover agents' first-hand participation, surveillance by various other agents, and consensually recorded phone conversations between agents and Abulaban about the transaction, and the recording of the actual transaction, and events leading up to the arrest, plus the testimony of the participating law enforcement agents on the scene." Aff. at 3. As the evidence provided, there is no reason to believe that the testimony of these individuals would have created a reasonable probability that the verdicts or sentence would have been different.

In addition, Mr. Miller interviewed Petitioner's brothers, sisters, their spouses, as well as his wife and brother-in-law and several others who consistently established that Petitioner is well known as a "blowhard" without any experience in dealing drugs. The potential witnesses listed by Petitioner all have substantially similar testimony, which mirrors the representations Mr. Miller makes about the interviewed witnesses' testimony. Mr. Miller's decision to limit the

interviews to those he conducted was entirely reasonable and due to Petitioner's guilty plea, could not have affected the verdict or sentences imposed.

### 3. Failure to Wait for Rulings

Petitioner argues that he did not receive effective assistance of counsel due to Mr. Miller's failure to wait on rulings on pre-trial motions before "forcing" petitioner to enter a guilty plea. Petitioner argues that (1) trial counsel's failure to wait for a ruling on his motion to transfer venue and (2) trial counsel's failure to review information concerning the government's confidential informant render his guilty pleas unknowing and involuntary.

As a matter of law, Petitioner waived his right to challenge all nonjurisdictional challenges, including venue, when he entered a plea of guilty to both indictments. *United States v. Lujan*, 324 F.3d 27, 30 (1st Cir. 2003). Petitioner's argument that his counsel's representation was ineffective due to his failure to wait for a ruling on the venue motion is without merit.

Petitioner then claims that his counsel was ineffective due to the fact this Court granted Petitioner's motion to compel disclosure of information regarding confidential informants, but his counsel failed to review that information. Again, as a matter of law, this argument must fail. To satisfy the burden of ineffective assistance of counsel, Petitioner must demonstrate that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner, however, fails to offer any evidence that trial counsel, in fact, failed to review this information or that if his counsel had reviewed the information, it would have been a reasonable probability the outcome of the proceedings would have been different.

### 4. Sentencing Challenges

Petitioner argues that his sentence should be vacated based on his counsel's ineffective assistance due to the fact that (1) he was subject to "sentencing entrapment" and (2) his trial counsel allowed him to be sentenced to an amount of time greater than the law allowed under his guilty plea. Under the *Strickland* test, the petitioner must demonstrate that his counsel's conduct fell below an objective standard of reasonableness according to prevailing professional norms, or that there was a reasonable probability that, absent counsel's errors, the result of the proceedings would have been different.

Petitioner argues in his Memorandum in Support of his Motion that due to the nature of the reverse-sting operation, he was subject to sentencing entrapment whereby the law enforcement agents control the quantity and prices of the drugs involved to maximize the potential sentence. Petitioner's substantive legal argument, however, is not relevant to this current motion. At the time of the trial, trial counsel made substantially similar arguments to those advanced by Petitioner in this motion. At no point in the motion does Petitioner claim that Mr. Miller failed in his duty to effectively argue these matters. Petitioner instead bases his argument in favor of his motion on the Court's possible misreading of the law of entrapment. Such an argument is not the basis to find ineffective assistance of counsel. To the contrary, Mr. Miller's representation of Petitioner on this matter was robust.

Petitioner next argues that his counsel was ineffective because the sentence imposed was greater than that authorized by law as a result of the guilty plea. He claims that the four-level enhancement found by this Court for Petitioner's role in the offense was unconstitutional. Petitioner bases his argument on a misreading of *Cunningham v. California*, which maintained that any fact that increases the penalty beyond the prescribed statutory maximum must be

submitted to the jury and proven beyond a reasonable doubt. 549 U.S. 270 (2007) (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). In this case, the sentence imposed by the Court was *not* beyond the statutory maximum and fell within the recommended guidelines. Mr. Miller's assistance could not, therefore, have been ineffective in terms of arguing against a sentence above the statutory maximum. It is within the discretion of the Court to determine an appropriate sentence under the Sentencing guidelines by a preponderance of the evidence. *United States v. Vinson*, 886 F.2d 740, 741-42 (4th Cir. 1989).

### 5. Failure to Appeal

Petitioner argues that his appellate counsel was ineffective because he failed to raise on direct appeal claims regarding (1) the insufficiency of evidence concerning his guilty pleas for the ecstasy conspiracy and possession of the firearm; (2) conflicting and shifting prosecutorial theories; (2) sentencing entrapment and unwarranted enhancements, (4) various sentencing arguments, (5) the disproportionate sentence when compared to similarly situated defendants, and (6) judicial bias from extrajudicial information at sentencing.

On the ecstasy conspiracy (1:08-cr-101), Petitioner entered into a plea agreement whereby he waived his right to appeal his conviction. Specifically, the plea agreement stated that Petitioner "knowingly waiv[ed] the right to appeal the conviction and any sentence within the statutory maximum described [in the agreement]...on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement." Plea Agreement at 4. Once Petitioner knowingly and voluntarily waived his right to appeal the conviction on those grounds, as evidenced by the plea colloquy, he cannot claim that his counsel was ineffective for failing to raise those issues on appeal. They were effectively waived.

On the reverse-sting conspiracy Petitioner signed a conditional plea agreement, which preserved his right to challenge the seizure of the firearm on appeal. On appeal, appellate counsel forcefully argued his client's position on the seizure of the firearm, albeit unsuccessfully. Nonetheless, Mr. Miller's representation was hardly ineffective. An appellate counsel "need not (and should not) raise every nonfrivilous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). Reviewing an appellate counsel's performance, there is a strong presumption of attorney competence and the court's review is highly deferential. In this case, Petitioner offers no evidence that appellate counsel's advocacy on his behalf was at all ineffective or caused any prejudice. To the contrary, Mr. Miller's decision not to pursue several of the frivolous arguments advanced by Petitioner is a sign of a good advocate, rather than ineffective assistance of counsel.

## B. DUE PROCESS VIOLATIONS

Petitioner argues that his sentence should be vacated based on the lack of due process he felt accompanied his plea agreement.

### 1. No Rational Trier of Fact Could have Found Guilt

Petitioner claims that he was denied due process protections afforded by the U.S. Constitution because no rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. As described above, however, Petitioner entered into a plea agreement with the Government that was knowingly and voluntarily made. In *Bousley v. United States*, the Supreme Court determined that a conviction based on a guilty plea is subject to collateral review only in strictly limited circumstances. *Bousley*, 523 U.S. 614 (1998). When a guilty plea is made by a person who has been advised by competent counsel it may not be collaterally

14

attacked. *Mabry*, 467 U.S. at 508. The inquiry for the District Court, therefore, is limited to whether or not the underlying plea was both counseled and voluntary. This issue is extensively addressed elsewhere. Having determined that Petitioner was effectively counseled in this matter, he is not entitled to have his sentence vacated based on violations of due process.

### 2. The Government's Shifting and Allegedly Misleading Positions

Petitioner next argues that the prosecutor denied him a fair proceeding in violation of the due process clause of the Fifth Amendment, based on the argument that the prosecutor adopted shifting and, at times, misleading positions. As discussed by the Government, Petitioner's knowing and voluntary guilty plea made any inconsistencies in the Government's pre-trial pleadings or indictment irrelevant. These issues were never previously raised and cannot be the basis to vacate Petitioner's sentence under § 2255.

### 3. Calculation of Petitioner's Sentence

Petitioner next argues that his due process rights under the Fifth and Sixth Amendments were violated because the Court imposed a sentence in the absence of findings beyond a reasonable doubt. As discussed, the District Court may consider a number of factors when imposing a sentence following a guilty plea. The Supreme Court has held that it is permissible for trial judges to exercise discretion by taking into account various factors relating to both the offense and the offender, while imposing a sentence within the range prescribed by the relevant statute. *See Cunningham v. California*, 549 U.S. 270 (2007); *See also Apprendi* at 490. In this case, Petitioner received a sentence below the statutory maximum. The District Judge, therefore, has the discretion to determine the appropriate sentence under the Sentencing Guidelines by a preponderance of the evidence. The standard is not "beyond a reasonable doubt" at the sentencing phase. In this case, the evidence along with Defendant's knowing and voluntary

guilty plea establish that the District Court was within its discretion when it calculated and imposed Petitioner's sentence. This is not a ground by which Petitioner is entitled to have his sentenced vacated.

### 4. Disproportionate Sentence

Petitioner claims that the Court denied him a fair sentencing proceeding by imposing a disproportionate sentence. He argues that there is an unwarranted disparity between the sentence imposed on Petitioner and those of similarly situated defendants to the same conspiracies. Petitioner claims that he is a first-time offender with no criminal history and is bi-polar.

In determining Petitioner's sentence, the Court made a thorough assessment of Petitioner's criminal history, medical history, and several other factors as well as considering the extent of his participation in both indictments. As the Government argues, but for Petitioner's involvement in this conspiracy, the crimes would not have occurred. Petitioner was an essential player in the conspiracy and his sentence is in keeping with his leadership position within the conspiracy.

As discussed, a defendant's guilty plea may only be collaterally attacked in the most extraordinary of circumstances. In this case, the Court considered Petitioner's role in the conspiracy, as admitted to in the guilty plea and imposed a sentence well below the statutory maximum. The sentence imposed was based on the circumstances surrounding the matter and Petitioner's own plea. It was not based on misinformation and the sentence was not disproportionate to similarly situated defendants.

### 5. Extrajudicial Information

Finally, Petitioner claims that the Court denied him a fair sentencing proceeding due to extrajudicial information that tainted the Court's impartiality. This contention does not create a

basis for vacating Petitioner's sentence because (1) is it not supported by the record and (2) it is procedurally barred. Petitioner argues that the Court considered information in sentencing Petitioner that Petitioner did not have access to and which it should not have considered. Specifically, Petitioner claims the following statement by the Court was without any evidence:

> "Mr. Abulaban has clearly minimized the money that he has made through drug dealing and other unlawful conduct over time, and he has placed assets in third-party names as the Government has demonstrated."

Sentencing Hearing Trans. Oct. 30, 2008 at 5-6. Petitioner claims that this information was not provided to the Court in any proceedings or attached to any pleadings, yet the Court relied on it during sentencing. Petitioner concludes, therefore, that the court must have been privy to extrajudicial information, leading to an impartial Court.

As the Government points out in its Response, in an early bond revocation proceeding before U.S. District Judge Ellis, the Government demonstrated the fact that Petitioner obtained assets through drug sales and intentionally placed the assets in third part names. The Government further points to it first meeting with Petitioner, which was recorded on March 13, 2007, where Petitioner told an undercover agent that he had distributed cocaine for the past 15 years and that he had earned most of his assets from selling cocaine. Petitioner seemingly argues that this information was a lie told out of pride in an attempt to simply to make himself into something he is not. This argument is not proper at this time. The Court relied on the plea agreement and other information readily available on the record. There was no extrajudicial information considered by the Court. This is not, therefore, a ground to vacate Petitioner's sentence.

## CONCLUSION

For good cause shown and for the reasons stated herein, Petitioner's Motion to Vacate his Sentence pursuant to 28 U.S.C. § 2255 is DENIED.

August 20, 2013
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge